**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL NO. 3:14CV725-RJC-DSC**

| | |
|---|---|
| GATEWOOD CAMPBELL, )<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CAROLYN W. COLVIN, )<br>Commissioner of Social )<br>Security Administration, )<br>Defendant. )<br>_____) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #10) and Defendant's "Motion for Summary Judgment" (document #11), as well as the parties briefs and submissions.

This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

**I. PROCEDURAL HISTORY**

On October 26, 2001 and November 22, 2012, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") alleging that she became disabled on March 1, 2007 due to epilepsy and mild traumatic brain injury. (Tr. 240, 249, 272, 275). The applications were denied initially and upon reconsideration. (Tr. 55-106).

1

Plaintiff requested a hearing which was held on July 29, 2013. (Tr. 11-49).

On October 3, 2013, the Administrative Law Judge ("ALJ") determined that Plaintiff was not disabled. (Tr. 158-175). The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 163). The ALJ also found that Plaintiff suffered residuals from closed head injuries including seizures, headaches and depression, which were severe impairments within the meaning of the regulations Id., but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 163-64). The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC")[1] to perform a full range of work at all exertional levels limited to simple, routine, repetitive tasks and avoiding even moderate exposure to hazardous machines and heights. (Tr. 164-169). The ALJ found that Plaintiff could not perform her past relevant work as a director of church membership. (Tr. 169).

The ALJ shifted the burden to the Secretary to show the existence of other jobs in the national economy that Plaintiff could perform. In response to a hypothetical that factored in the above limitations, a Vocational Expert ("V.E.") identified jobs as a cleaner II and dryer attendant that Plaintiff could perform. The V.E. stated that more than 5,200 of these jobs were available locally and more than 350,000 were available nationally. (Tr. 45, 170). The V.E. stated that there was no conflict between her testimony and the Dictionary of Occupational Titles ("DOT"). Id.

Based upon this testimony, the ALJ found that there were a significant number of jobs in the regional and national economy that Plaintiff could perform. (Tr. 170) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 171).

---

[1]The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

On October 22, 2014, the Appeals Council denied Plaintiff's Request for Review. (Tr. 1-3).

Plaintiff filed the present action on December 29, 2014. She assigns error to the ALJ's evaluations of the October 19, 2011 opinion letter from Dr. Andrea Diedrich, her treating neurologist, and of Plaintiff's credibility. "Memorandum in Support … " at 2-3 (document #10-1). Plaintiff also contends that the ALJ failed to elicit credible testimony from the V.E. Id. at 3. Finally, Plaintiff assigns error to the Appeals Council's determination that Dr. Diedrich's May 19, 2014 letter referred to a later time and did not warrant remand. Id. at 17-18

The parties' Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became disabled[2] as that term of art is defined for Social Security purposes. The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). In making that assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR96-8p at *2. However, it is the claimant's burden to establish her RFC by demonstrating how those impairments impact her functioning. See 20 C.F.R. §§404.1512(c) & 416.912(c); see also,

---

[2]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012). The ALJ's RFC determination here is supported by substantial evidence including Plaintiff's testimony, medical records and treatment history.

Plaintiff asserts that the ALJ failed to give proper weight to Dr. Diedrich's opinions. The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of an alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

The ALJ acknowledged Dr. Diedrich's letter dated October 19, 2011, which stated, "She is going to look into applying for disability because while her cognition on neuropsychological testing was not severely impaired enough to warrant disability, it does not appear likely, based on recurrent breakthrough seizures as well as medication side effects and inability to handle stress that she would be able to hold gainful employment." (Tr. 403). The ALJ found Dr. Diedrich's

5

opinion inconsistent with Plaintiff's report of totally disabling symptoms. Dr. Diedrich failed to recommend any restrictions or seizure precautions. (Tr. 169, 403). The ALJ cited to Dr. Diedrich's conclusions that "[t]here has been no alteration of consciousness so I have not instituted seizure precautions" and that Keppra and Tranxene controlled Plaintiff's symptoms. (Tr. 420). If a symptom can be reasonably controlled by medication or treatment, it is not disabling. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

The ALJ found that Dr. Diedrich's opinion was without substantial support from the other evidence of record, thus rendering it less persuasive. (Tr. 169). State agency medical consultants concluded that Plaintiff was able to meet the mental demands of work involving simple tasks with simple instructions in a stable work setting while avoiding even moderate exposure to hazards. The ALJ gave these opinions greater weight. (Tr. 101-103).

Plaintiff argues that Dr. Diedrich's May 19, 2014 letter constitutes new evidence that warranted remand by the Appeals Council. The Act provides that the Court may remand a case to the Commissioner for "additional evidence to be taken ... upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Applying that standard, in Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) the Fourth Circuit held that the Appeals Council must consider evidence submitted with the request for review if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision. Id. Evidence is new within the meaning of this section if it is not duplicative or cumulative. Id. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Id.

The Appeals Council found that Dr. Diedrich's May 19, 2014 letter related to a time period

after the ALJ's decision. The letter was written in the present tense, seven months after the ALJ's decision. The letter also fails to meet the definition of "new" evidence because it is duplicative and cumulative. Plaintiff asserts that "Dr. Diedrich more fully laid out her restrictions for Mrs. Campbell in an opinion letter dated May [1]9, 2014 [sic]," Dr. Diedrich's letter simply reviews Plaintiff's symptoms and course of treatment. Dr. Diedrich notes that Plaintiff does not drive, and recommends that she avoid swimming, bathing alone, or operating machinery. She concludes that it is unlikely Plaintiff will be able to sustain any gainful employment. (Tr. 557-558). Although the letter references Dr. Diedrich's October 2011 opinion, the limitations imposed upon the Plaintiff relate to the present. For example, Dr. Diedrich stated "At present [Plaintiff] is not driving at all. I recommend that [Plaintiff] not operate any other sort of machinery." (Tr. 557). The letter restates Dr. Diedrich's 2011 opinion without adding any new information relevant to the period under review. (Tr. 558).

Dr. Diedrich's statement that the "[Plaintiff] was unable to work in any capacity" is an opinion on an issue reserved for the Commissioner (Tr. 558). See 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1) (A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled).

Plaintiff also assigns error to the ALJ's credibility determination. A review of the ALJ's decision reveals that his credibility determination is supported by substantial evidence.

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. §

7

416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [her] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's residuals from closed head injuries including seizures, headaches and depression – which could be expected to produce some of the symptoms she claims. Accordingly, the ALJ found that Plaintiff met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not consistent with the objective evidence in the record. 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.") The ALJ is responsible for making credibility determinations and resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The ALJ is accorded deference with respect to determinations of a claimant's credibility. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984). Indeed, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Id.

Upon review of Plaintiff's testimony, the ALJ stated "[a]fter careful consideration of the

8

evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are partially credible for the reasons stated below." (Tr. 165). Plaintiff argues "[t]hough the ALJ finds [Plaintiff's] testimony 'partially credible,' the ALJ fails to explain what testimony he finds credible, what testimony he does not find credible and why." Document #10-1 at 5. Plaintiff also argues that the ALJ used boilerplate language recently criticized by the Fourth Circuit. Mascio v. Colvin, 780 F.3d 632, 639 (4th Cir. 2015)

The Social Security Administration has drafted template language for inclusion in ALJ decisions. See Mascio, 780 F.3d at 638 n.9 (citing Bjornson v. Astrue, 671 F.3d 640, 644–45 (7th Cir. 2012)). The following language related to determining credibility was criticized in Mascio:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Id. at 639. The Fourth Circuit found that this language implies that a claimant's ability to work is determined first and then used to assess his credibility. The Court concluded that the language conflicts with the Agency's regulations. Id. at 639 (citing Bjornson, 671 F.3d at 645; 20 C.F.R. § 416.929(a); SSR 96-8p). The Fourth Circuit went on to explain that use of this language constitutes harmless error if the ALJ "properly analyzed credibility elsewhere." Id.; accord Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012) ("If the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless.").

In this case, the ALJ did not use the language the Mascio Court found objectionable. Moreover the ALJ considered Plaintiff's testimony and explained which of her statements he found

9

credible and which he did not.

> The paragraph immediately preceding the ALJ's credibility finding states:
>
> At the hearing, the claimant testified that she has had confusion and trouble with her memory ever since she slipped and fell 2005 that did not get any better after her second injury. She testified that she stopped working in 2007 and continues to struggle with confusion, memory problems, word retrieval, with processing things, with directions, with seizures frequently, and with side effects from medications. The claimant testified that she cannot work due to a very limited attention span and because she tires easily.

(Tr. 165).

The ALJ went on to note that "claimant alleges disability since March 1, 2007, but it is worth noting that there are some indications that she stopped working for reasons other than the allegedly disabling impairments. As indicated above, less than one month prior, February 21, 2007, she was doing very well without recurrent seizures, and she told Dr. Diedrich that she resigned (gave up or quit) from her job." (Tr. 168, 418). In February 2012, Dr. Britt reported that Plaintiff had been out of work for years and was 'largely a stay-at-home mom.' (Tr. 168, 391). Plaintiff testified that after she stopped working, she stayed home with her young sons and focused on taking care of her family. (Tr. 16, 168).

The ALJ also found that "there is no evidence of a significant deterioration in the claimant's medical condition since she resigned in 2007." (Tr. 168). He noted that "[t]he record reflects that treatment has been effective in controlling the claimant's symptoms." (Tr. 168, 407, 416, 417). He also considered that "[i]n February 2012, Dr. Britt found that the claimant was improving cognitively." (Tr. 168, 393). The ALJ further noted that "in March 2010, Dr. Diedrich told the claimant that she did not think that she will qualify as totally and permanently disabled to qualify for Social Security benefits." (Tr. 168, 407).

The ALJ considered Plaintiff's reports of her daily activities, finding that "[i]n addition to

10

taking care of her family and her role as the caregiver to her elderly grandmother, the claimant has engaged in daily activities which are not limited to the extent one would expect, given her complaints of multiple side effects from medications including, but not limited to confusion, memory problems, sleep disturbances, dizziness, limited attention span, and becoming tired easily." (Tr. 20-33, 168). The ALJ also considered Plaintiff's reports that she cooked, cleaned, washed dishes, vacuumed, dusted, shopped for groceries, and paid bills for the family. (Tr. 168, 390). In April 2012, Plaintiff's husband completed a "Function Report - Adult - Third Party" indicating that she assists in getting her children ready for school, ensures they get on the bus, tends to their home, prepares dinner, and assists with homework. (Tr. 299, 391).

Further supporting his finding that Plaintiff's claims of disability were not credible, the ALJ stated that "[i]n addition to her ability to maintain her household chores and care for her grandmother and despite her allegedly disabling symptoms and limitations, the record also reflects that she continued to drive and actually drove unaccompanied to her appointment with Dr. Britt in February 2012 and arrived promptly." (Tr. 168, 390). The record also shows that Plaintiff ran a half marathon as recently as January 2013. (Tr. 168, 403, 406, 416, 463).

Ultimately, the ALJ summed up his credibility findings as follows:

> While it is not doubted that the claimant has limitations resulting from her impairments, the evidence indicates that she was primarily hindered from working due to her lack of confidence that she could sustain employment and loss to know how to pursue other job options (Tr. 168, 409, 414). This, in conjunction with the evidence that establishes her ability to engage in a wide range of daily activities and sustained concentration, stamina, and balance to train for and run marathons indicates that the extent of her symptoms and limitations are less than alleged.

(Tr. 168-169). The ALJ properly found that Plaintiff's statements were only partially credible and cited to substantial evidence in support of his findings.

Plaintiff assigns error to the ALJ's reliance on the V.E.'s testimony. A V.E.'s testimony

11

is not credible unless it is "in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989) (Pl. Memo 18). A hypothetical question is unimpeachable if it "adequately reflect[s] a residual functional capacity for which the ALJ had sufficient evidence." Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005).

Here, the ALJ posed the following hypothetical to the V.E.:

> Assume that I find on the basis of the credible record [be]fore me for a full relevant period that the claimant's demonstrated certain significant non-exertional impairments principally relating to status post-closed-head injury, history of seizures, headaches, history of depression, which limits her to work requiring avoid even moderate exposure to hazardous machinery and heights; simple, routine, repetitive tasks. Taking into full account these non-exertional restrictions, the claimant's age, education, and prior relevant work experience, are there jobs existing in the general area in which the claimant lives and several regions of the country that she could do with these limitations?

(Tr. 44-45). In response, the V.E. identified jobs as a cleaner II and dryer attendant that Plaintiff could perform.

Plaintiff contends that the hypothetical fails to account for her difficulty in communicating with others. Plaintiff argues that she self-reported difficulty with finding words. However, Dr. Diedrich's only assessment of her language skills was that "[Plaintiff] does have mild non-fluency of speech." (Tr. 416).

Plaintiff also relies on Dr. Diedrich's May 19, 2014 letter, which as previously discussed relates to a later time. Dr. Diedrich's statement that "Mrs. Campbell is at times quite articulate but at other times struggles to find words" was a current assessment of Plaintiff's ability that is not material here.

Plaintiff finally alleges that the V.E.'s testimony conflicted with the Dictionary of Occupational Titles (DOT). Plaintiff incorrectly asserts that the job of dryer attendant requires

12

operation of a continuous chain conveyor in close proximity to a variable temperature dryer and caustic chemicals. Plaintiff also alleges the job has a specific vocational preparation ("SVP") of 3, or semi-skilled work. The DOT states:

> Code 581.686-018 Title: Drier Attendant (garment)
>
> Hangs garments, such as skirts and suits, on hooks suspended from chain conveyor that carries garments through curing oven to dry and cure finish applied to garment. Removes cured garments from conveyor onto rack for further processing. **GOE: 06.04.40 STRENGTH: M GED: R1 M1 L1 SVP: 1 DLU: 77**

The drier attendant hangs garments on hooks. The attendant does not operate the conveyor or the drier. The job has a SVP of 1, or unskilled work, and falls within Plaintiff's RFC.

Plaintiff alleges "[t]he job of Cleaner 2 requires use of steam-cleaning equipment to clean the interiors and exteriors of transportation vehicles such as airplanes and railroad cars." Document #10-1 at 21. She also alleges "[t]his steam-cleaning equipment is also hazardous machinery. And given the size of some of the transportation vehicles requiring cleaning, this job likely also includes climbing and frequent exposure to heights." Id. The DOT states:

> Code: 919.687-014 Title: Cleaner II (any industry)
>
> Cleans interiors and exteriors of transportation vehicles, such as airplanes, automobiles, buses, railroad cars, and streetcars: Cleans interior of vehicle, using broom, cloth, mop, vacuum cleaner, and whisk broom. Cleans windows with water, cleansing compounds, and cloth or chamois. Replenishes sanitary supplies in vehicle compartments. Removes dust, grease, and oil from exterior surfaces of vehicles, using steam-cleaning equipment, or by spraying or washing vehicles, using spraying equipment, brush or sponge. May polish exterior of vehicle. May fumigate interior of vehicle, using fumigating gases or sprays. May be designated according to type of vehicle cleaned as Airplane Cleaner (air trans.); Automobile Washer (automotive ser.); Bus Cleaner (automotive ser.); Car Cleaner (r.r. trans.); Coach Cleaner (r.r. trans.); Truck Washer (dairy products). When cleaning aircraft interiors may be designated Cabin-Service Agent (air trans.). **GOE: 05.12.18 STRENGTH: M GED: R2 M1 L1 SVP: 1 DLU: 77**

While Plaintiff alleges that operation of steam cleaning equipment is required, the DOT

provides that use of this equipment is part of a range of options including sprayers, brushes and sponges. Plaintiff's RFC limitations do not preclude work included in the cleaner II job.

Although the medical records establish that Plaintiff experienced symptoms to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994) (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #10) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #11) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005);

Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED**.

_____
David S. Cayer
United States Magistrate Judge